IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**MARIELA CORDERO,**
    Petitioner,

    v.

**COMMISSIONER OF SOCIAL SECURITY**,

    Defendant.

Civil No. 24-1321 (BJM)

## OPINION AND ORDER

Mariela Cordero ('Cordero") seeks review of the Social Security Administration Commissioner's ("the Commissioner's") finding that she is not entitled to disability benefits under the Social Security Act ("the Act"), 42 U.S.C. § 423. Cordero contends that the Administrative Law Judge ("ALJ") erred in using the wrong Listing at Step Three to determine her carpal tunnel did not reach the level of severity needed to find her disabled. Docket No. ("Dkt.") 15. Further, she asserts the ALJ failed to resolve an alleged conflict between the Vocational Expert's ("VE") evaluation and the Dictionary of Occupational Titles ("DOT"). *Id.* The Commissioner opposed. Dkt. 22. This case is before me by consent of the parties. Dkts. 5, 9. For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

## STANDARD OF REVIEW

After reviewing the pleadings and record transcript, the court has "the power to enter a judgment affirming, modifying, or reversing the decision of the Commissioner." 20 U.S.C. § 405(g). The court's review is limited to determining whether the Commissioner and his delegates employed the proper legal standards and found facts upon the proper quantum of evidence. *Manso-Pizarro v. Secretary of Health & Human Services*, 76 F.3d 15, 16 (1st Cir. 1996). The Commissioner's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or

*Cordero v. Commissioner of Social Security*, Civil No. 24-1321(BJM) 2

judging matters entrusted to experts. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Ortiz v. Secretary of Health & Human Services*, 955 F.2d 765, 769 (1st Cir. 1991). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Visiting Nurse Association Gregoria Auffant, Inc. v. Thompson*, 447 F.3d 68, 72 (1st Cir. 2006) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Secretary of Health & Human Services*, 819 F.2d 1, 3 (1st Cir. 1987).

A claimant is disabled under the Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a claimant is unable to engage in any substantial gainful activity when she "is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, all evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

Generally, the Commissioner must employ a five-step evaluation process to decide whether a claimant is disabled. 20 C.F.R. § 404.1520; *see Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Goodermote v. Secretary of Health & Human Services*, 690 F.2d 5, 6–7 (1st Cir. 1982). In Step One, the Commissioner determines whether the claimant is currently engaged in "substantial gainful activity." If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At Step Two, the Commissioner determines whether the claimant has a medically severe impairment or combination

*Cordero v. Commissioner of Social Security*, Civil No. 24-1321(BJM)     3

of impairments. 20 C.F.R. § 404.1520(c). If not, the disability claim is denied. At Step Three, the Commissioner must decide whether the claimant's impairment is equivalent to a specific list of impairments contained in the regulations' Appendix 1, which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt. P, App. 1. If the claimant's impairment meets or equals one of the listed impairments, she is conclusively presumed to be disabled. If not, the ALJ assesses the claimant's Residual Functional Capacity ("RFC") and determines at Step Four whether the impairments prevent the claimant from doing the work she has performed in the past. If the claimant can perform her previous work, she is not disabled. 20 C.F.R. § 404.1520(e). If she cannot perform this work, the fifth and final step asks whether she can perform other work available in the national economy in view of her RFC, as well as her age, education, and work experience. If the claimant cannot, then she is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

At Steps One through Four, the claimant has the burden of proving that she cannot return to her former employment because of the alleged disability. *Santiago v. Secretary of Health & Human Services*, 944 F.2d 1, 5 (1st Cir. 1991). Once a claimant has demonstrated a severe impairment that prohibits return to her previous employment, the Commissioner has the burden under Step Five to prove the existence of other jobs in the national economy that the claimant can perform. *Ortiz v. Secretary of Health & Human Services*, 890 F.2d 520, 524 (1st Cir. 1989). Additionally, to be eligible for disability benefits, the claimant must demonstrate that her disability existed prior to the expiration of his insured status, or her date last insured. *Cruz Rivera v. Secretary of Health & Human Services*, 818 F.2d 96, 97 (1st Cir. 1986).

**BACKGROUND**

The following is a summary of the treatment record, consultative opinions, and self-reported symptoms and limitations as contained in the Social Security transcript. Because Cordero only challenges the ALJ's finding regarding her carpal tunnel, Dkt. 15, I only discuss the medical records addressing this issue. I also note that she alleged disability beginning on January 28, 2021, Tr. 86, and her date last insured was December 31, 2025. Tr. 34. The Commissioner denied Cordero's application for benefits initially, on reconsideration, and after a hearing before an ALJ. Tr. 79-86, 87-92, 26-53.

*Medical History*

**State Insurance Fund ("SIF")**

Cordero received medical care from the State Insurance Fund ("SIF") from May 2, 2014 through August 22, 2022. Tr. 134-280. She alleged pain in her lower back, entire right arm, hand and fingers. She also had pain in her upper back up to her forehead. Tr. 135.

On July 7, 2021, SIF determined Cordero had received the maximum benefits of treatment and was discharged on July 6, 2021. Tr. 140.

On November 23, 2021, Cordero had a medical hearing in which she appealed SIF"s decision to discharge her without disability due to a sprained right elbow. TR. 210-11. On January 27, 2022, Cordero received a resolution from the Industrial Commission to return her case to SIF so that it could refer her to a hand surgeon for evaluation of her carpal tunnel on her right side. Tr. 211.

On April 5, 2022, SIF reopened Cordero's claim and determined she was to receive treatment for carpal tunnel but that she could continue working. Tr. 141; 178. She was referred to the hand surgeon to evaluate the carpal tunnel in her right hand. Tr. 178; 224. SIF also ordered X-Rays and EMG for her hands. *Id.*

*Cordero v. Commissioner of Social Security*, Civil No. 24-1321(BJM) 5

On April 28, 2022, Cordero got X-rays of the right wrist. Tr. 240. Dr. Fernando Lopez noted there were no fractures or dislocations. He also found there were no gross carpal tunnel calcifications or peripheral abnormalities. *Id.*

On July 21, 2022, SIF ordered an electromyographic examination on Cordero's upper extremities. Tr. 342. The physiatrist conducting the exam noted Cordero had very mild sensory carpal tunnel on her right side. Tr. 343. However, he did not order physical therapy. Tr. 344. Cordero began seeing an acupuncturist in August 2022. However, the notes are largely illegible. Tr. 217-21. On September 2, Cordero saw a hand surgeon, who ordered a PMR and EMG. He would reevaluate Cordero with the results. Tr. 222.

**Dr. Melba Sotomayor (Neurology)**

On April 8, 2021, Cordero did a non-invasive venous scan, which revealed evidence of the subclavian compression bilaterally, but is more predominant in the right side. Tr. 333. On April 27, Cordero had a three-phase bone scan done. It showed an inflammatory process in several interphalangeal and carpal joints of the hands. Tr. 324. Additionally, she had a nerve conduction velocity test done, which revealed bilateral median nerve entrapment neuropathy. Tr. 336. On May 13, Dr. Sotomayor diagnosed her with carpal tunnel syndrome. Tr. 323, 325, 334, 338. From the progress notes, it seems Cordero was treated only with medication, such as Neurontin. Tr. 314-39; 348-53.

**San Francisco Imaging**

On November 24, 2021, Cordero had a hand and wrist sonoarthrography with color doppler done. Tr. 352. The exam showed mild synovial thickening at the proximal interphalangeal joint in the left index. There was borderline left sided swelling. *Id.*

**Laboratorio Vascular Clinico – Ponce**

*Cordero v. Commissioner of Social Security*, Civil No. 24-1321(BJM) 6

On March 12, 2021, Cordero had a non-invasive arterial study of her upper extremities done. Tr. 832-34. The study found no evidence of atherosclerotic or stenotic disease bilaterally. There was also normal triphasic flow throughout her arm arteries. Finally, there was no evidence of subclavian artery compression during any arm or head maneuvers, bilaterally. Tr. 834.

### *Procedural History*

Cordero filed an application for disability benefits on September 20, 2021 alleging disability beginning on January 28, 2021. Tr. 32; 528-31. Her claim was initially denied on January 19, 2022, with a finding that she could perform another job despite her limitations. Tr. 86. Cordero requested reconsideration and submitted additional evidence. Tr. 371; 391. Cordero's claim was denied on reconsideration on April 21, 2022, affirming the initial determination. Tr. 87-92; 369-78.

On December 22, 2021, Dr. Priscilla E. Mieses-Llavat completed a consultative examination. Dr. Mieses-Llavat found Cordero's upper extremities were symmetrical, and there was no tenderness. Tr. 651. Her Tinel's and Phalen's tests were negative. *Id.* The grip strength of both hands was five out of five. *Id.* Cordero also had full range of motion in her hands. *See* Tr. 654-55.

A hearing was held via video conference on January 18, 2023, before ALJ Livia Morales. Tr. 44-70. Cordero did not claim new conditions or changes in her existing ones.

Cordero testified she had completed a bachelor's degree in human resources, and was currently unemployed. Tr. 63. Cordero stated she worked as an accounting assistant until January 2021. *Id.* Her job was mostly sitting but had to carry 10 pounds. Cordero stated she has a driver's license, but she has not driven since January 2021 because she had an accident at work and was paralyzed[1]. Tr. 60-61. She had constant pain in her neck, which goes down to her right hand and

---

[1] It is not clear whether Cordero was in fact paralyzed since she also states that she was able to stand up. Tr. 65.

*Cordero v. Commissioner of Social Security*, Civil No. 24-1321(BJM)                                                                                                    7

elbow. Tr. 61. The pain feels like a very strong current or a burning fire. Tr. 62. Her right hand goes numb and she cannot move her fingers. The heaviest she can now lift is a can of beans. Tr. 66. Her right hand is dominant. *Id.* Cordero also has numbness in her right leg most of the time. Tr. 67. She can sit for ten minutes at a time, stand for ten to fifteen minutes at a time, and walk about fifteen minutes at a time. Tr. 67-68. Cordero cannot cook because she cannot move the rice or meat with her hands. Tr. 68. Her husband, mom and eldest son do the cleaning. *Id.* Cordero does nothing but sit, walk and lie down during the day because she is in a lot of pain. Tr. 69. She only leaves her house to go to her mom's house which is across the street from hers. Her husband and mother do all the shopping because she cannot walk for more than 15 minutes or stand up. *Id.* Cordero can't stand seeing a lot of people because she gets anxious.

      Cordero also testified she suffers from depression and anxiety. Tr. 70. She is constantly crying and feels like screaming. She spends a lot of time alone. She doesn't feel like taking a bath because she can't bend down. *Id.* She forgets everything and cannot concentrate. Cordero testified she was admitted to the Capestrano Hospital because her doctor saw she was depressed and anxious. Her doctor sent her to the hospital to seek help for her anxiety, depression, loneliness and fear. *Id.* She has trouble sleeping as a result of the strong pain in her right foot.

      Cordero testified she has been going to the SIF since 2014 that gave her hot and cold therapy for her right hand. Tr. 72. The SIF also gave her kerosene and acupuncture for her right hand, and hot and cold patches for her back. She states none of it helped. *Id.* Cordero also received physical therapy for her neck, arm and back through her insurance but it also did not help. Tr. 73. Cordero testified as well that in 2022, she was referred to a hand surgeon by the SIF and was waiting for a determination if surgery was warranted. *Id.*

*Cordero v. Commissioner of Social Security*, Civil No. 24-1321(BJM)                                                                 8

A Vocational Expert ("VE"), Aracelis Figueroa, also testified. She classified Cordero's past work as an accounting clerk, which is defined as sedentary work in the DOT with a Specific Vocational Preparation ("SVP") of five. Tr. 74. The ALJ asked the VE to consider a hypothetical individual who, like Cordero, was 45 years old, had a bachelor's degree, and had previously worked as an accounting clerk. *Id.* The ALJ then asked the VE to assume this person was limited to light work and to the following activities: climb ramps and stairs frequently; balance frequently; stoop, kneel, crouch and crawl occasionally. *Id.* Further, she is limited to simple and routine tasks; can concentrate two hours at a time and do only one to two instruction tasks. The VE stated such a person could not perform Cordero's past job as defined in the DOT. *Id.*

The ALJ next inquired if a person with the same age, education and vocational experience as Cordero could do any other job in the nation on a sustained basis. The VE answered that such a person could perform other work in the national economy, such as an assembler, an order caller, and a marker, all SVP of two. Tr. 74-75.

The ALJ then asked if a person could perform the listed jobs if she had the same limitations as stated before but the person can stand and walk for four hours in an eight-hour day; can raise their right arm above their head and in all other directions frequently; can handle with their right hand and fingers frequently; can climb stairs and ramps occasionally and never climb ladders, ropes or scaffolds; never be exposed to unprotected heights but can be exposed to moving mechanical parts and operate a motor vehicle occasionally. Tr. 75. Further, that person can have contact with the public frequently. The VE stated such a person could perform those jobs. *Id.*

The ALJ next inquired if a person limited to the same limitations except at a sedentary level could perform any of the listed jobs. *Id.* The VE answered that such a person could perform other work in the national economy, such as a document specialist, an envelope addresser, and a tube

*Cordero v. Commissioner of Social Security*, Civil No. 24-1321(BJM)                                                         9

operator, all SVP of two. The ALJ then asked how long a person can be off task without losing their job. The VE stated a person could be off task for 10% of the task. Tr. 76. The VE stated if a person were off task more than 10% of the time, said person could not perform any of the listed jobs. *Id.* The VE stated her testimony was consistent with the DOT, but regarding her testimony about standing or walking for four hours, the social interaction, time off task and maintaining concentration was based on the VE's professional experience, education, and training. She further stated that "it's not inconsistent with the DOT." Tr. 76.

Claimant's attorney also asked the VE whether a person could perform the listed jobs if said person was instead limited to occasionally being able to move the right arm in all directions; and handle, finger, and feel with the right hand occasionally. Tr. 76-77. The VE stated said person could not perform any of the listed job. Tr. 77.

To further clarify, the ALJ asked if a person with the limitation claimant's counsel stated could perform any other jobs in the national economy. Tr. 77. The VE answered that such a person could perform other work in the national economy, such as an election clerk, a call out operator, and a surveillance system monitor, all SVP of two and performed at a sedentary level. Tr. 77.

On February 1, 2023, the ALJ found that Cordero was not disabled under sections 216(i) and 223(d) of the Act. Tr. 26-49. After determining Cordero meets insured status requirements through December 31, 2025, the ALJ made the following findings at Steps One through Five:

(1) Cordero had not engaged in substantial gainful activity during the period of her alleged on-set.

(2) She had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, osteoarthritis, carpal tunnel syndrome, major depressive disorder and generalized anxiety disorder (20 CFR 404.1520(c)).

(3) She did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

(4) She retained the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) with additional limitations. She can stand and/or walk for four hours in an eight-hour workday. She can frequently handle and finger with both upper extremities. She can frequently balance; occasionally stoop, kneel, crouch, crawl and climb ramps and stairs; and never climb ladders, ropes, or scaffolds. She can work around moving mechanical parts, occasionally operate a motor vehicle and never work at unprotected heights. She can make simple work-related decisions, and perform jobs with one to two step instructions. She can concentrate in two-hour intervals in an eight-hour workday and can frequently interact with the public.

(5) Additionally, as per her age, education, work experience, and RFC, Cordero could perform jobs that existed in significant numbers in the national economy.

The Appeals Council denied review, Tr. 1-8, and this action followed.

## DISCUSSION

Cordero asserts the ALJ erred in evaluating her carpal tunnel syndrome under incorrect Listings at Step Three, erred in failing to explain why her alleged symptoms were not consistent with evidence on the record, and erred in relying on the VE's testimony that Cordero could perform light work. Dkt. 15 at 17-19. I address each argument in turn.

### I.   Listing at Step Three

Cordero argues the ALJ used the incorrect listing at Step Three for her carpal tunnel syndrome. Dkt. 15 at 12-13. She states the ALJ should have applied Listing 1.02 instead of Listings

*Cordero v. Commissioner of Social Security*, Civil No. 24-1321(BJM)                                                                 11

11.14 and 14.09. *See id.* The Commissioner counters arguing Listing 1.02 is no longer applicable. Dkt., 20 at 4-5.

As mentioned above, at Step Three, the ALJ evaluates whether the plaintiff's impairment falls under one of the Listings. If the ALJ relies on an improper or outdated listing, reversal may be warranted. *See Rivero-Rosado v. Comm'r of Soc. Sec.*, 22-cv-4319 (OTW), 2024 WL 1134585, at *4 (S.D.N.Y. March 15, 2024).

The Agency revised the listings related musculoskeletal disorders, which became effective on April 2, 2021. *See* Revised Medical Criteria for Evaluating Musculoskeletal Disorders, 85 Fed. Reg. 78164 (Dec. 3, 2020) ("Revised Medical Criteria"). These listings will apply "to new applications filed on or after the effective date of the rules, and to claims that are pending on or after the effective date." *Id.* "The new regulations provide that while the agency will be using the new listings in administrative decisionmaking [sic] on or after the effective date of April 2, 2021, it 'expects that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decision." Carolyn A. Kubitschek, Jon C. Dubin, SOCIAL SECURITY DISABILITY: LAW AND PROCEDURE IN FEDERAL COURT, §5:56 (2024 ed.) (citing 85 Fed. Reg. 78164, n.2 (Dec. 3, 2020). Among the changes the Agency made was eliminating Listing 1.02. *See* Revised Medical Criteria, 85 Fed. Reg. 78161; 20 C.F.R. Pt. 404, Subpt. P, App.1.

Here, Cordero filed her claim on September 20, 2021, and the ALJ issued her decision on February 1, 2023. Tr. 26, 32. Because her claim and the ALJ decision were filed after the revised listings became effective, Listing 1.02 was no longer applicable to Cordero's claim. As such, the ALJ did not commit an error.

**II.      Residual Functional Capacity (RFC)**

*Cordero v. Commissioner of Social Security*, Civil No. 24-1321(BJM)                                                                 12

Cordero argues the ALJ failed to explain why Cordero's pain and alleged symptoms due to her carpal tunnel were not entirely consistent with the evidence on the record and did not explain why the symptoms were discounted. Dkt. 15 at 15-16. The Commissioner argues the ALJ properly supported her determination that her complaints were not consistent with the evidence on the record and the ALJ included manipulation limitations that the Agency failed to identify. Dkt. 20 at 6-7. The Commissioner is correct.

An RFC assessment is "ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (*citing* 20 C.F.R. §§ 416.927(e)(2), 416.946). But because "a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Id.* A claimant is responsible for providing the evidence of an impairment and its severity; the ALJ is responsible for resolving any evidentiary conflicts and determining the claimant's RFC. 20 C.F.R. § 404.1545(a)(3); *see also Tremblay v. Sec'y of Health & Human Servs.*, 676 F.2d 11, 12 (1st Cir. 1982).

Cordero takes issue with what she contends is a boilerplate sentence to discount her symptoms. Dkt. 15 at 15. I do note the ALJ included boilerplate language such as, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 40. However, the ALJ then explained that conclusion in an analysis spanning over six pages and cited evidence from the record throughout her discussion. *See* Tr. 40-46. For example, the ALJ noted Cordero's progress notes from SIF showed "claimant often complained of pain in her back, neck, lower back, right arm, and right hand." Tr. 41. These notes also showed Cordero was treated through medications and physical therapy. *Id.* In fact, due to

claimant's subjective complaints and the objective evidence on the record, the ALJ added manipulative restrictions to Cordero's RFC, contrary to what the Agency's medical consultants who stated she had no restrictions. *See* Tr. 41-42. As such, the ALJ did not commit an error.

### III.    Inconsistency in Exertion Level

Cordero's last argument is that the VE's testimony conflicted with the DOT, that the administrative law judge failed to obtain or provide an explanation for the conflict, and that she is, therefore, entitled to remand, citing Social Security Ruling 00–4p. Dkt. 15 aty17-19. Specifically, the VE identified three jobs at the light exertional level that the plaintiff could perform with the RFC assigned to her by the ALJ: assembler, order caller and marker. Tr. 48; 74-75. The Commissioner contends the ALJ relied on the VE's testimony, which was consistent with the DOT, and the attorney at the hearing failed to ask about any conflict. Dkt. 20 at 10-11.

The three jobs listed by the VE are listed at the light exertional level. Per Social Security Regulation 83-10, "…the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. SSR 83-10, 1983 WL 31251 (January 1, 1983). Cordero argues that the conflict lies in that the ALJ gave a hypothetical in which an individual could only stand/walk for 4 hours of an eight-hour workday. Additionally, Cordero argued there is a discrepancy in the ALJ's finding she cannot perform her past job, which was classified as sedentary, but can perform other jobs classified as light work. However, Cordero's past job was also classified as skilled with an SVP of 5; while the jobs listed by the VE were unskilled with an SVP of 2. Thus, there is no conflict. And even if there was, Cordero's attorney had the opportunity to question the VE as to the potential conflict and failed to do so. *See O'Bannon v. Colvin*, No. 1:13-CV-207-DBH, 2014 WL 176128, at *8 (D. Me. Apr. 29, 20-14).

Finally, the ALJ included the four-hour limitation in a hypothetical question posed to the VE. The ALJ "was entitled to rely on her response as including that limitation and as being based on her training, education, and experience." *Id.* at *9; *see also Sokolowski v. Colvin,* No. 12–cv–942–bbc, 2013 WL 4782813, at *5 (W.D.Wisc. Sept. 6, 2013); *see also Barker v. Astrue,* Civil No. 09–437–P–S, 2010 WL 2680532, at *5 (D. Me. June 29, 2010). Additionally, I note other courts have rejected similar arguments. *See, e.g., Roybal v. Colvin,* No. EDCV 12–02198–JEM, 2013 WL 4768033, at 15 (C.D.Cal. Sept. 4, 2013) (when RFC specifies less than full range of light work, limitation to four hours of standing or walking "fits comfortably into the range of frequent activity for light jobs"; thus, no inconsistency between VE testimony and DOT); *Bratton v. Astrue,* No. 2:06–0075, 2010 WL 2901856, at *3 (M.D.Tenn. July 19, 2010) (vocational expert testimony identifying light jobs that involved standing or walking for four hours out of eight-hour day does not conflict with DOT). As such, the ALJ did not commit an error.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 20th day of March, 2025.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge